The undersigned have reviewed the award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence as a whole, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with some minor technical modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties, as
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. Medical records from Dr. Freidrich, marked as Stipulated Exhibit 1, are received into evidence.
3. A medical record from Dr. Jacobs, marked as Stipulated Exhibit 2, is received into evidence.
4. A medical record from Dr. Sherrill, marked as Stipulated Exhibit 3, is received into evidence.
5. Medical records from Dr. Gaylon, marked as Stipulated Exhibit 4, are received into evidence.
6. A medical record from Dr. Anderson, marked as Stipulated Exhibit 5, is received into evidence.
7. A December 10, 1996 letter, marked as Stipulated Exhibit 6, is received into evidence.
8. An October 28, 1996 letter, marked as Stipulated Exhibit 7, is received into evidence.
9. A January, 1996 order of the Industrial Commission, marked as Stipulated Exhibit 7, is received into evidence.
 ***********
Based upon all of the competent, credible, and convincing evidence adduced from the record of the initial hearing proceedings, the undersigned make the following additional
 FINDINGS OF FACT
1. On April 18, 1994, plaintiff sustained a compensable crush injury when a 120 pound drill was dropped onto his left foot.
2. The parties entered into a Form 21 agreement, approved by the Industrial Commission on June 23, 1994 whereby the defendants agreed to pay compensation to the plaintiff, beginning April 26, 1994 and continuing for "necessary weeks".
3. Between April 18, 1994 and January 25, 1995, plaintiff underwent three surgeries under the direction of Dr. Freidrich on his left foot: one for possible evacuation of a hematoma on a branch of the sural nerve, one for an exploration and lysis around the superficial peroneal nerve, and one for a scar revision.
4. On January 25, 1995, Dr. Freidrich released plaintiff to return to work with the following restrictions: no climbing, no squatting, and no wearing of high-top boots. At that time, Dr. Freidrich thought plaintiff had reached maximum medical improvement with regard to his left foot.
5. On June 19, 1995, plaintiff returned to see Dr. Freidrich, seeking treatment for continuing problems with swelling and bleeding in his left foot. Dr. Freidrich recommended that plaintiff receive a skin graft over the open wound on his left foot in order to allow the wound to heal completely.
6. Plaintiff had difficulty locating work within the restrictions set forth by Dr. Freidrich in the area where he lived in North Carolina; and so sometime after his initial release from Dr. Freidrich plaintiff moved to Georgia in an attempt to locate employment.
7. While in Georgia, the defendants authorized plaintiff to obtain ongoing medical treatment for his left foot under the direction of an orthopedic surgeon, Dr. Gaylon. Dr. Gaylon recommended a fourth surgery to be performed on plaintiff's left foot. On July 31, 1996, Dr. Gaylon surgically performed a second scar revision of plaintiff's left foot.
8. On September 25, 1996, Dr. Gaylon released plaintiff to return to work. Dr. Gaylon's September 25, 1996 medical record is inherently contradictory as to whether plaintiff had been released without restrictions. In light of the re-evaluation of plaintiff's left foot by Dr. Freidrich discussed below as well as the fact that Dr. Gaylon knew that Dr. Freidrich had given plaintiff a twenty percent disability rating to his left foot, the undersigned find that Dr. Gaylor intended to release plaintiff with the restrictions set forth by Dr. Freidrich on January 25, 1995.
9. Plaintiff has had poor results following the scar revision performed by Dr. Gaylon. As of February 11, 1997, plaintiff had two areas of ulceration over the anterior aspect of his left ankle.
10. On February 11, 1997, Dr. Freidrich re-evaluated plaintiff's left foot, and he was still of the opinion that a skin graft over the wound on plaintiff's left foot would allow this area to heal completely. Dr. Freidrich was still of the opinion that plaintiff continued to be able to only do work within restrictions. Plaintiff could not do any squatting. Plaintiff could not do any ladder climbing, and he continued to be able to only wear low top shoes.
11. Plaintiff had not reached maximum medical improvement with regard to his left foot injury.
12. Plaintiff's ongoing disability is not the result of a pre-existing condition or another cause unrelated to the April 18, 1994 compensable injury by accident.
13. The condition of plaintiff's left foot at the time it was examined by Dr. Freidrich on February 17, 1997 is a direct and natural result of the April 18, 1994 compensable injury by accident.
14. A skin graft or flap over plaintiff's open wounds on his left ankle is reasonably necessary to lessen plaintiff's disability and/or effect a cure.
15. From April 18, 1994 through the date of the initial hearing in this matter, plaintiff was only able to obtain temporary jobs as a substitute teacher earning $600.00 and as a laborer collecting admissions at the Blue Rodeo, a tavern, four nights earning $60.00. Plaintiff's accounts of his job location efforts are accepted as credible and convincing by the undersigned.
16. Defendants have not identified any suitable employment that plaintiff could obtain if he diligently sought such employment.
17. From August 23, 1996 to September 17, 1996, plaintiff was incarcerated while awaiting a bond hearing.
18. During November, 1995, plaintiff's ongoing temporary total disability payments were suspended by the defendants without authorization from the Industrial Commission. On January 5, 1996, then Special Deputy Commissioner Martha Lowrance ordered the defendants to pay six weeks of back payments of temporary total disability benefits defendants owed to the plaintiff for the time period from late November 1995 to January 5, 1996. The defendants were assessed a ten percent penalty because of the failure to pay those benefits in a timely manner. Defendants' refusal to pay this penalty is based upon stubborn, unfounded litigiousness.
19. On November 20, 1996, following an Industrial Commission Form 24 telephonic informal hearing, Special Deputy Commissioner Amy Pfeiffer entered an order authorizing the defendants to terminate payment of compensation as of September 25, 1996.
This order was improvidently entered in light of the findings of fact above, which are determined following a full hearing on the merits concerning the period following plaintiff's release from incarceration.
20. The plaintiff concedes that he has returned to work with his brother as of April 1, 1997. Plaintiff admits that he has been earning $6.00 an hour as of April 1, 1997, in the contentions submitted by counsel for the plaintiff, which is less than his pre-injury wages.
 ***********
The foregoing findings of fact engender the following
 CONCLUSIONS OF LAW
1. Plaintiff enjoys a presumption of ongoing disability as a result of the approved Form 21 agreement in this case. Plaintiff was released to return to work at a time when he had restrictions on his abilities to perform work. In order to rebut the Form 21 presumption, the defendants had the burden in proving that there was suitable work available to the plaintiff that the plaintiff could obtain with due diligence. Defendants have failed to sufficiently or convincingly meet this burden in proving that plaintiff is no longer disabled as a result of the April 18, 1994 compensable injury by accident for the time period from September 25, 1996 to April 1, 1997. Plaintiff's earnings in temporary jobs as a substitute teacher and a laborer at the Blue Rodeo was not sufficient or convincing proof to successfully rebut the presumption of plaintiff's temporary total disability during this time period. Kisiah v. W. R. Kisiah Plumbing, Inc., 124 N.C. App. 72,476 S.E.2d 434 (1996), disc. rev. denied, 345 N.C. 343,483 S.E.2d 169 (1997).
2. Plaintiff is entitled to ongoing temporary total disability compensation in the amount of $280.01 beginning September 25, 1996 to April 1, 1997. Plaintiff is entitled to temporary partial disability compensation for the time period beginning April 1 1997 to the present and continuing at a rate of sixty-six and two thirds of the difference between $420.00 and the average weekly wage he has earned since April 1, 1997. The Form 24 Application was improvidently approved on November 20, 1996 with regard to the termination of benefits with an effective date of September 25, 1996. N.C. Gen. Stat. § 97-29; N.C. Gen. Stat. § 97-30.
3. The suspension of plaintiff's benefits for the time period while he was incarcerated was justified. The Form 24 Application approved on November 20, 1996 with regard to suspension of benefits for the time period beginning August 23, 1996 to September 17 is UPHELD. Defendants may offset any disability payments owed to the plaintiff with the amount paid to the plaintiff during this time period. Parker v. Union CampCorp., 108 N.C. App. 85, 422 S.E.2d 585 (1992).
4. The defense against plaintiff's claim for a ten percent penalty was based upon unreasonable grounds. The undersigned have the authority to award attorney's fees against the plaintiff under such a circumstance. N.C. Gen. Stat. § 97-88.1.
5. Plaintiff is entitled to have the defendants provide all medical treatment arising from the April 18, 1994 compensable injury by accident to the extent it tends or tended to effect a cure, give relief, or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following
 AWARD
1. Defendants shall pay to the plaintiff temporary total disability compensation at a rate of $280.01 per week for the time period beginning September 25, 1996 to April 1, 1997. This amount has accrued and shall be paid in a lump sum to the plaintiff, and subject to an offset in the amount of $660.00 in earnings that plaintiff has made, and to an offset for the amount the defendants paid to the plaintiff while he was incarcerated as well as the attorney's fees approved below.
2. Defendants shall pay directly to the plaintiff temporary partial disability compensation at a rate of sixty-six and two thirds of the difference between $420.00 and the average weekly wage he has earned since April 1, 1997 to the present and continuing until further order of the Industrial Commission. The portion of this amount that has accrued shall be paid directly to the plaintiff in a lump sum, subject to the attorney's fee approved below.
3. A reasonable attorney's fee in the amount of twenty-five percent of the compensation due plaintiff under paragraphs 1 and 2 of this Award is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth check shall be paid directly to counsel for the plaintiff.
4. Defendants shall pay a ten percent penalty as previously ordered on January 5 1996 by then Special Deputy Commissioner Martha Lowrance. Defendants shall pay $500.00 in attorney's fees directly to counsel for the plaintiff.
5. Defendants shall pay for all medical expenses incurred or to be incurred by the plaintiff as a result of the April 18, 1994 compensable injury by accident. These medical expenses shall include payment for plaintiff to undergo skin graft surgery.
6. Defendants shall pay the costs.
 ***********
IT IS FURTHER ORDERED that this case be REMOVED from the Full Commission hearing docket.
This the _____ day of _______________, 1998.
 S/ ________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _______________ DIANNE C. SELLERS COMMISSIONER
S/ _______________ RENÉE C. RIGGSBEE COMMISSIONER
JHB/kws